## No. 9879.

### Succession of Drauzin Triche, on Opposition to Final Account of Administrator.

When in a contested provisional account, the amount and rank of various charges and privileged claims have been settled by final decrees of court, the same claims cannot be again contested when presented in a final account of distribution.

The administrator of an insolvent succession, left in possession of a fractional part of a sugar plantation with a growing crop on it, which has been sold to a person who fails to comply with his bid, and against whom he has taken proceedings for a sale *a la folle enchere*, is sustained, under the particular circumstances of this case, in making an arrangement with the purchaser of the rest of the plantation, including the stock, implements and sugar-house, by which the latter takes charge for his own account of the crop and property under the obligations to pay the taxes, keep the land, fences, ditches and improvements in order and repair, and to so plant and cultivate the land as to keep it, at all times, as nearly as possible in the condition in which it was at date of sale, and in readiness to respond to a decree for a sale *a la folle enchere.*

Under the circumstances of the case, the administrator will not be held liable for the crop or for the rents and revenues.

APPEAL from the Twentieth District Court, Parish of Lafourche. *Beattie,* J.

*Clay Knobloch,* for the Administrator, Appellee:

*T. D. Moore* and *T. A. Badeaux, John Ray* and *J. S. Billiu,* for Opponents and Appellants.

The opinion of the Court was delivered by

Fenner, J.   Several of the matters involved in the present oppositions were presented to and determined by us, under oppositions to the provisional account of the administrator, in cause No. 8458 of our docket, reported by syllabus only, in 34 Ann. 1148.   We find that the items of the present account, Nos. 1, 2, 3, 4, 5 and 6, which are now opposed, were finally settled by the decrees in that case, by which the opponents here are bound, and, as to them, the plea of *res adjudicata* was properly sustained.

### II.

Mrs. Medus' opposition to the distribution of the gross proceeds of nine-tenths of Laurel Grove Plantation, as between herself and Mrs. Trosclair, has received our careful attention, but we are unable to perceive the slightest merit in it.   She is simply a concurrent mortgagee with Mrs. Trosclair, and the administrator has distributed the fund to them in the exact proportion of their respective claims.

### III.

Lapène & Ferré's opposition to the eighth item of the account seems to be utterly inconsequential, even if not concluded by the plea of *res judicata*. In the provisional account the amount of Lapène's bid for the part of Orange Grove Plantation was fixed at $10,731, and, in our decree thereon, he was ordered to pay into the administrator's hands the sum of $8060 as having a preference on the proceeds over the mortgage notes held by him. The administrator, accepting these amounts as fixed by that decree, now reports the difference of $2671 as the amount retained by Lapène. Lapène & Ferré, who now claim ownership of the mortgage note, then held by Lapène, claim that this is error; that the amount of Lapène's bid was not $10,731, but only $10,230, and, therefore, that the amount retained on account of said bid was not $2671, but only $2170.

Lapène (by whose acts, in the matter of these notes, we hold his firm of Lapène & Ferré fully bound), was an opponent to the provisional account, and should have had this error of figures then corrected. But, were it otherwise, inasmuch as under this final account of an insolvent succession, Lapène & Ferré, receive nothing under either hypothesis, we see no harm to them from the error, and no benefit they would derive from its correction.

### IV.

The remaining and most serious grounds of opposition are the claims that the administrator should be charged in this account with the net proceeds of the crop of 1875, on the part of Orange Grove sold to Lapène, and with the rents and revenues of said portion, from 1875 to March, 1883, when Lapène was finally sent into possession.

The facts are as follows:

The succession was insolvent. A sale for cash to pay creditors was provoked, which took place on September 4th, 1875. Orange Grove was a sugar plantation, with a growing crop upon it. In compliance with Art. 132 of the Constitution of 1868, it was divided into lots for purposes of sale. Lapène became the adjudicatee of several lots, but T. J. Badeaux became the purchaser of the larger portion of the plantation, together with the sugar-house, all the mules, carts, wagons, farming implements, etc. Badeaux complied with his bid and was sent into possession. Lapène declined to comply with his bid, claiming that he was entitled to retain the whole amount thereof, on account of the mortgage notes of Lapène & Ferré held by him.

Thereupon, the administrator took a rule on Lapène to show cause

why the lots should not be resold *à la folle enchère*, and Lapène took a contrary rule upon the administrator to show cause why the adjudication to him should not be completed, and why he should not be placed in possession.

The situation was a singular one. By Lapène's action the administrator found himself left in possession of fractional and disconnected lots of a sugar plantation, on which there was a growing crop, while the remainder of the plantation, including the sugar-house and all the stock and farming implements, had been sold and delivered to Badeaux.

The pending proceeding for a resale *à la folle enchère*, rendered the possession of the administrator exceedingly precarious, and also imposed upon him the duty of keeping the property as nearly as possible in the condition in which it was at the date of the first sale.

There was no apparent means of taking off the share of the growing crops except by use of the stock, wagons, implements, etc., and the sugar house of Badeaux; and the latter refused to make a contract for taking off and manufacturing the crop for account of the administrator, for various cogent reasons assigned by him, amongst which were the following: that the lines between the various lots had never been actually run and could not then be run without injury to the crop; that the expense of grinding Lapène's cane separately from his own would be too large; that, as he had but one cistern, the molasses could not be separated; that, in case of a freeze, he would wish to grind his own cane first and might thereby lose the other and incur liability, and the like.

In the meantime, the administrator was confronted with the problem of what he was to do with the property thereafter.

The evidence satisfies us that the land could not have been rented under such circumstances, by reason of the necessary precariousness of the possession and for want of a sugar house for taking off the crop. All the testimony as to the rental value of the land is based on the hypothesis that there was a sugar house upon it; and no witness testifies that the land alone, without stock, implements or sugar house, could have been rented, even leaving out of view the impossibility of fixing any term for a lease.

The administrator, therefore, concluded, under the circumstances, that the best thing to do was to turn the property over to Badeaux, to take charge of it, take off the crop and continue the cultivation, under the obligations of paying the taxes, keeping up and repairing the ditches, fences and improvements, and so planting and cultivating the land as to keep the property, at all times, as nearly as possible in the situation in which it was at the date of the sale.

He made an agreement to this effect with Badeaux, who has faithfully carried it out; and though the litigation was prolonged beyond all reasonable expectation, this does not appear to be attributable to the fault of the administrator, and we think the arrangement made by him was prudent and reasonable, and that the responsibility now sought to be cast upon him is not sustained in law or equity. Succession of Clairteaux, 35 Ann. 1178.

Judgment affirmed.